**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| HUSMIRA R.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 25-cv-2015-LTS<br><br>**REPORT AND RECOMMENDATION** |

---

Husmira R. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## *I. BACKGROUND*

Claimant was born in 1976. (AR[1] at 353.) She is a high school graduate. (*Id*. at 358.) Claimant allegedly became disabled due to post COVID-19 condition, chest pain, shoulder pain, inflammation, shortness of breath, and lung scarring. (*Id*. at 357.) Claimant's onset of disability date is February 5, 2021. (*Id*. at 353.) On May 16, 2022, Claimant protectively filed his application for DIB. (*Id*. at 139, 323.) Her claim was denied originally on November 30, 2022 (*id*. at 139, 174-181), and was denied on reconsideration on March 1, 2023. (*Id*. at 139, 182-190.) A hearing was held on

[1] "AR" cites refer to pages in the Administrative Record.

February 5, 2024, with Claimant and her attorney Joseph Diperna appearing telephonically before Administrative Law Judge ("ALJ") Kim Fields. (*Id.* at 156-173.) Vocational Expert ("VE") Joshua Tilton also appeared at the hearing telephonically. (*Id.*) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on March 5, 2024. (*Id.* at 139-148.)

Claimant requested review and the Appeals Council denied review on February 18, 2025. (*Id.* at 1-3.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On April 23, 2024, Claimant timely filed his Complaint in this Court. (Doc. 4.) On August 20, 2025, all briefing was completed, and the Honorable Leonard T. Strand, United States District Court Judge, referred the case to me for a Report and Recommendation.

## *II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

### *A. The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through December 31, 2026. (AR at 141.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from his alleged onset date of February 5, 2021. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: chronic respiratory disorder, fibromyalgia, and obesity. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 142.) The ALJ evaluated Claimant's claims under listing 3.02 (chronic respiratory disorders), 12.04 (depressive disorders), and 12.15 (PTSD). (*Id.*) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except she can occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, and crawl.

(*Id.* at 143.) Also at the fourth step, the ALJ determined that Claimant was unable to perform her past relevant work. (*Id.* at 147.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including small products assembler, marker, and routing clerk. (*Id.* at 147-48.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 148.)

### *B. The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting

*Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing

that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## *III. DISCUSSION*

### *A. Parties' Arguments*

Claimant argues that the ALJ failed to properly consider the opinions of Dr. Lydia Mustafic, M.D., Claimant's primary care physician and Dr. Lauren Graham, M.D., a specialist at the University of Iowa Hospitals and Clinics, a treating source. (Doc. 11 at 18-22.) Both Dr. Mustafic and Dr. Graham diagnosed Claimant with long haul COVID-19 and opined that Claimant is unable to perform full-time work. (*Id.*) Claimant also argues that the ALJ failed to "comply with SSA's policy regarding the symptoms evaluation and the evaluation of long COVID claims." (*Id.* at 22.) Claimant maintains that the ALJ "failed to find that long COVID was a medically determinable severe impairment." (*Id.*) Claimant asserts that while the ALJ noted Claimant's long haul COVID diagnosis, the ALJ "fragmented [Claimant's] post-COVID symptoms into separate diagnoses—chronic respiratory disorder, fibromyalgia, and obesity—without recognizing their unified connection to Long COVID syndrome." (*Id.* at 23.) Claimant also argues that the ALJ did not properly evaluate her "symptoms and assess her RFC adequately," suggesting that the ALJ's credibility determination was improper. (*Id.* at 25-26.) Relying on EM-21032, Claimant contends that the ALJ did not properly assess her long COVID under Social Security rules. (*Id.* at 26-27.) Lastly, Claimant argues that the ALJ "failed to fully and fairly develop the record concerning [Claimant's] Long COVID limitations." (*Id.* at 29-32.)

The Commissioner argues that an ALJ "is not required to address statements on issues reserved to the Commissioner." (Doc. 13 at 8.) Specifically, the Commissioner argues that:

> In May 2022 both Lauren Graham, M.D. and Lydia Mustafic, M.D. completed the same "Restrictions Form" in connection to a private/employer disability claim (Tr. 1633, 1758, 1921). After treating Plaintiff for just a few months, Dr. Graham stated Plaintiff was "unable to return to work" beginning in January 2021—a year before she began treating Plaintiff (Tr. 1758). Dr. Mustafic stated Plaintiff "cannot return to work" and "can't do anything full time," leaving blank the suggestion box for when such an incapacity began (Tr. 1633). As noted above, it is the Agency's responsibility to decide whether Plaintiff met the stringent requirements to be considered disabled under its own rules, thus statements by others about that decision are not valuable or persuasive. *See* 20 C.F.R. § 404.1520b(c)(3). The ALJ "will not provide any analysis about how [she] considered such evidence." 20 C.F.R. § 404.1520b(c).

(*Id.* at 8-9.) The Commissioner also argues that "substantial evidence supports the ALJ's RFC assessment." (*Id.* at 10.) The Commissioner maintains that the "ALJ explicitly evaluated [Claimant's] allegations of long-COVID within the RFC assessment" and "[i]n fact, the ALJ made it explicitly clear she considered that Plaintiff's alleged disability 'due to post-COVID 19,' offering a detailed account of all the limitations Plaintiff attributed to 'long-haul COVID' (Tr. 143-44)." (*Id.* at 11.) The Commissioner also points out that "[d]espite her repeated references to EM-21032, Plaintiff entirely overlooked that the ALJs are directed within that memo to '[f]ollow existing policy to assess the severity of COVID-19.' EM-21032(2)." (*Id.* at 13.) Further, Claimant argues that the ALJ properly addressed Claimant's subjective allegations of disability. (*Id.* at 14-15.) The Commissioner concludes that:

> In sum, substantial evidence supports the ALJ's assessment of Plaintiff's subjective symptoms because she articulated her rationale, citing the full scope of the objective medical record; Plaintiff's own testimony and statements within Function Reports; and all medical opinions/prior administrative medical findings (Tr. 142-46). With this evidence in mind, the ALJ reasonably determined that although Plaintiff's impairments

> produced some limitations, the substantial evidence of record failed to corroborate the entirety of her allegations (*Id.*).

(*Id.* at 16.)

***B. Pertinent Medical Evidence***

***1. Dr. Mustafic***

On May 4, 2022, Dr. Mustafic filled out a "Restrictions Form" for Lincoln Financial Group. (AR at 1633.) Dr. Mustafic checked a box limiting Claimant to sedentary work. (*Id.*) In the margin, Dr. Mustafic opined that Claimant "can't do anything full time." (*Id.*) In the space requesting a description of "Physical, Mental and/or Cognitive restrictions that correspond with the diagnosis(es)," Dr. Mustafic reported: "long haul COVID with depression, chronic chest pain, obesity, chronic SOD, chronic neck pain, shoulder pain, fatigue, [and] now diabetes." (*Id.*) Under "restrictions imposed," Dr. Mustafic opined that Claimant "cannot return to work." (*Id.*) Dr. Mustafic concluded that, "I don't think [Claimant] will be able to return [to work]." (*Id.*)

***2. Dr. Graham***

On May 25, 2022, Dr. Graham filled out a "Restrictions Form" for Lincoln Financial Group. (AR at 1758.) Dr. Graham diagnosed Claimant with PASC (post-acute sequelae of COVID-19).[2] (*Id.*) Dr. Graham checked a box limiting Claimant to sedentary work. (*Id.*) Dr. Graham opined that "[d]ue to ongoing fatigue, atypical chest pain, [Claimant] is unable to return to work." (*Id.*) Dr. Graham indicated "continued work w[ith] medications for neuropathic symptoms" but "[n]o current approved treatment for PASC at this time." (*Id.*)

[2] Commonly referred to as "long COVID."

### *C. Relevant Law*

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

Under the rules articulated in 20 C.F.R. Section 404.1520c, when determining the persuasiveness of a medical opinion, no such opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her

medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Additionally, when assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322; *see also* SSR 16-3P (S.S.A.), 2017 WL 5180304, at *7-8 (outlining factors nearly identical to the factors found in *Polaski* for evaluating the intensity, persistence, and limiting effects of an individual's symptoms). An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

***D. Analysis***

Claimant's argument that the ALJ failed to address the opinions of Dr. Mustafic and Dr. Graham are without merit. The "Restriction Forms" that both doctors filled out for Lincoln Financial Group do not provide any detailed medical opinions or functional limitations or restrictions. Instead, the forms generically diagnose Claimant with long COVID and opine that she cannot perform full-time work. The Commissioner is correct that such opinions do not require the ALJ to address these opinions. *See* 20 C.F.R. § 404.1520b(c)(3) ("Statements on issues reserved to the Commissioner. The statements listed in paragraphs (c)(3)(i) through (c)(3)(viii) of this section would direct our determination or decision that you are or are not disabled or blind within the meaning of the Act, but we are responsible for making the determination or decision about whether you are disabled or blind."). Further, because the evidence listed in (c)(3) "is inherently neither valuable nor persuasive to the issue of whether you are disabled . . . under the Act, we will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." 20 C.F.R. § 1520b(c); *see also Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) ("[A] treating physician's

opinion as to whether a patient is disabled or unable to work is not dispositive because these are 'issues reserved to the Commissioner and are not the type of opinions which receive controlling weight.' *Vossen*, 612 F.3d at 1015; *accord Cox v. Astrue*, 495 F.3d 614, 619–20 (8th Cir. 2007) ('Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.')."); *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) ("Dr. Tucker's conclusory statement that McDade had become unable to work on March 14th, 2009, . . . is not entitled to deference because it is a judgment reserved for the Commissioner.") (Quotation omitted). Accordingly, I find that the ALJ did not err by not addressing Dr. Mustafic's and Dr. Graham's "Restriction Forms" in her decision.

EM-21032 REV 2 provides in pertinent part:

> C. Policy Guidance
> 1. Establishing and coding a medically determinable impairment (MDI)
> We need objective medical evidence from an acceptable medical source (AMS) to establish the existence of an MDI for COVID-19, including long-term effects of COVID-19, which means signs, laboratory findings, or both (DI 24501.020A). We establish an MDI for COVID-19 when evidence from an AMS indicates:
> • A report of a positive viral test for SARS-CoV-2,
> • A diagnostic test with findings consistent with COVID-19 (e.g., chest x-ray with lung abnormalities, etc.), or
> • A diagnosis of COVID-19 with signs consistent with COVID-19 (e.g., fever, cough, etc.).
>
> Follow existing policy for establishing an MDI (DI 24501.020).

https://secure.ssa.gov/apps10/reference.nsf/links/03282024111904AM (last visited September 22, 2026).

Here, at step two, the ALJ addressed Claimant's impairments, other than those the ALJ found severe, as follows:

> Additionally, the claimant is managed medically for hypertension, tachycardia, hyperlipidemia, hypothyroidism, and non-insulin dependent uncomplicated type II diabetes mellitus. These conditions have generally been characterized as stable throughout the period. As discussed in further detail below under finding five, the claimant has presented with a range of variously located pain complaints. The state agency sent the claimant for x-rays of the bilateral shoulders and lumbar spine. However, these imaging studies showed only mild findings (Exhibit 14F; 15F; 16F; 17F; 18F; 20F). Similarly, imaging of the cervical spine revealed only mild findings (Exhibit 20F, page 36).
>
> Finally, the claimant was prescribed duloxetine through her family medicine provider for both pain and depression. She eventually established with outpatient psychiatry in March of 2023. Duloxetine was continued at current dosage. Rexulti was added. A mental status exam found the claimant with a depressed mood but otherwise unremarkable. Diagnoses included major depressive disorder and PTSD (Exhibit 29F, page 3). On follow up she reported improvement in mood with the added medication. A mental status exam was unremarkable, including euthymic mood and affect (Exhibit 29F, page 7). These sentiments were echoed in subsequent appointments going forward during the remainder of 2023 and into 2024, with wholly unremarkable mental status exams (Exhibit 29F; 32F, pages 1-3). When contacted by the state agency, the claimant flatly mental health having any impact on her ability to work (Exhibit 1A, page 3; 3A, page 3).
>
> The claimant's impairments of hypertension, heart palpitations, hyperlipidemia, hypothyroidism, type II diabetes mellitus, mild degenerative disc disease, mild degenerative joint disease, depression, and PTSD do not cause more than a minimal limitation in the claimant's ability to perform basic work activities. As such, the undersigned has found these impairments to be nonsevere in nature.

(AR at 142.) Next the ALJ addressed Claimant's medical history and considered that history in connection to her diagnosis and subjective allegations of long COVID:

> The claimant alleged disability due to post-COVID 19, chest pain, shoulder pain, inflammation, shortness of breath, and lung scarring (Exhibit 2E, page 2). She reported her impairments impact her ability to stand, walk, sit, lift, climb stairs, kneel, squat, bend, and reach. She denied any

difficulties with memory, concentration, interacting with others, or following instructions. She denied any difficulties with handling stress or changes in routine. Despite her physical impairments and purported limitations, the claimant remains independent for a wide range of daily activities, including daily personal care and grooming tasks, simple meal preparation, light household chores, driving, shopping, attending medical appointments, managing personal finances, and managing medications (Exhibit 3E; 6E).

During the hearing, the claimant testified she is unable to work due to physical impairments and limitations. She described experiencing pain and shortness of breath with activities. She indicated she typically needs to take a break to sit down after 10-15 minutes of standing or walking. She estimated she can sit for approximately 30-45 minutes before needing to adjust positions. She related these limitations to long-haul COVID. She reported she takes medications but does not find them beneficial.

As far as activities of daily living, the claimant testified she largely relies on her husband and son to take care of the household chores and grocery shopping. She did acknowledge she can prepare a simple meal for herself and can drive, including taking her son to school and going to the pharmacy to pick up her medications.

Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity.

Review of the medical evidence reveals the claimant's alleged disability onset date appears to align most closely to abdominal pain complaints which resulted in the claimant having her gall bladder removed in March of 2021. She had a positive COVID-19 test around this same time-frame as well. Going forward, she continued to present a variety of respiratory complaints, including shortness of breath and chest pain. However, pulmonary and cardiovascular work up was consistently negative for underlying etiology regarding these complaints. This includes a normal echocardiogram, normal stress test, normal pulmonary function study, and normal chest x-ray. In fact, it was noted she was released back to work on April 13, 2021,

with normal respiratory and cardiovascular exams and diagnostic findings (Exhibit 1F, page 2; 2F, pages 5 and 8; 4F, page 12). Respiratory and cardiovascular exams continued to remain generally unremarkable throughout the remainder of the period. A consult with rheumatology was negative for inflammatory arthritis. Essentially, no underlying etiology was identified with regard to her ongoing complaints of shortness of breath, chest pain, fatigue, and generalized pain/weakness. A fibromyalgia diagnosis was added at some point and a long-haul COVID diagnosis is indicated as well, presumably because she continually related to her providers that symptoms began following the COVID infection. Exam findings were positive for mildly decreased breath sounds and some areas of subjective tenderness and reduced range of motion but were otherwise generally unremarkable. She was managed conservatively through oral medications, physical therapy, and an albuterol inhaler for use as needed (Exhibit 1F; 2F; 3F; 4F; 6F; 10F; 12F; 19F; 20F; 21F; 22F; 23F; 24F; 25F; 26F; 27F; 30F; 31F; 32F).

In addition to the above impairments, obesity is documented in the record. The claimant's body mass index (BMI) has been recorded in the 30-35 range during the adjudicative period, falling within the mildly obese range. The undersigned has given consideration to Social Security Ruling 19-2p, which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from any other physical or mental impairment identified. The claimant's obesity has been considered in combination with the claimant's other established impairments and all limitations thereof have been incorporated into the residual functional capacity detailed above. The claimant was referred for consultative examinations in August of 2022 and again in February of 2023. Range of motion was reduced over the cervical spine, shoulders, and lumbar spine. Interestingly, grip strength was reduced bilaterally as well. However, no rationale was offered within these reports regarding the reduced grip strength, nor does the longitudinal medical evidence show any indication of treatment, or even complaints, of hand

> pain or weakness. No functional opinions were offered as part of these evaluations (Exhibit 9F; 13F).

(*Id.* at 143-45.)

Here, the ALJ followed the SSA's policy guidance and considered Claimant's long COVID diagnosis in combination with Claimant's overall medical record. Claimant argues that, by doing this, the ALJ "fragmented" Claimant's post-COVID symptoms. However, the medical record does not support this argument and Claimant points to nothing in the record to support this argument.

Further, the Eighth Circuit has held that "[o]ur precedent indicates that the failure to list a specific impairment at step two is not an error unless the impairment is 'separate and apart' from the other listed impairments." *Gregory v. Commissioner, Social Security Administration*, 742 Fed. App'x 152, 156 (8th Cir. 2018) (per curiam) (unpublished) (citing *Gragg v. Astrue*, 615 F.3d 932, 939 (8th Cir. 2010)). Additionally, "[a]n error at step two in failing to assess a claimed severe impairment 'is harmless if the claimant "makes a threshold showing of any 'severe' impairment [and] the ALJ continues with the sequential evaluation process and considers all impairments, both severe and non-severe."'" *Mistelle S. v. Saul*, No. 19-cv-01153 (SRN/HB), 2020 WL 3405437, at *4 (D. Minn. June 2, 2020) *report and recommendation adopted*, No. 19-cv-01153 (SRN/HB, 2020 WL 3402432 (D. Minn. June 19, 2020) (quoting *Snyder v. Colvin*, No. 12-cv-3104 (MJD/JJK), 2013 WL 6061335, at *9 (D. Minn. Nov. 18, 2013), in turn quoting *Bondurant v. Astrue*, No. 09-cv-328 (ADM/AJB), 2010 WL 889932, at *2 (D. Minn. Mar. 8, 2010)). Here, the ALJ considered Claimant's allegations of long COVID at step five, *see* AR at 143-46, and considered Claimant's allegations of long COVID in connection to her complaints of chest and shoulder pain, limited stamina, and breathing issues. *See id.*

The ALJ also determined that Claimant's subjective allegations of disability were:

> [E]roded when juxtaposed with the objective medical evidence. While the evidence shows the claimant has continued to present with complaints of shortness of breath, chest pain, fatigue, and generalized pain/weakness since contracting COVID-19 in February of 2021, objective findings and diagnostic studies have failed to support her complaints. Indeed, she has had exhaustive pulmonary and cardiac work up, including an echocardiogram, stress test, pulmonary function study, and chest x-ray, all of which came back normal. A consult with rheumatology was normal. And she was actually released back to work on April 13, 2021, with normal respiratory and cardiovascular exams and diagnostic findings (Exhibit 1F, page 2; 2F, pages 5 and 8; 4F, page 12). Overall, the claimant's subjective allegations are simply inconsistent with, and out of proportion with, objective medical findings, as discussed in detail above.

(AR at 146.) The ALJ also addressed Claimant's activities of daily living in determined Claimant's credibility:

> The claimant's allegations are eroded by her activities of daily living. Per her function reports, completed in June of 2022 and January of 2023, she remains independent for a wide range of activities, including personal care and grooming tasks, simple meal preparation, light household chores, driving, shopping, attending medical appointments, managing personal finances, and managing medications (Exhibit 3E; 6E). Collectively, the above activities appear inconsistent with the alleged intensity, persistence, and limiting effects of the claimant's impairments.

(*Id.*) The ALJ also addressed Claimant's pain levels, effectiveness of medications, and precipitating and aggravating factors. (*Id.* at 142-45.)

Based on the foregoing, it is clear from the ALJ's decision that she considered and addressed the *Polaski* and SSR 16-3p factors in determining that Claimant's subjective allegations of disability and the testimony of her witnesses were not fully credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and

considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Claimant's subjective complaints, I find that the ALJ's credibility determination should not be disturbed. *See Johnson*, 240 F.3d at 1148.

The ALJ also addressed the opinions of the state agency consultants:

> In accordance with 20 CFR 20 CFR 404.1520(c) and 416.920(c), the undersigned has considered the opinions of the state agency consultants of record who opined the claimant retains the residual functional capacity for a range of light work, including lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing/walking for six of eight hours; sitting for six of eight hours; occasional climbing of ramps/stairs; occasional climbing of ladders, ropes, or scaffolds; and occasional stooping, kneeling, crouching, and crawling (Exhibit 1A; 3A). These opinions are persuasive. The undersigned notes that these consultants did not have a treating or examining relationship with the claimant. Nor did they have the opportunity to review the complete medical evidence, observe the claimant's presentation at an administrative hearing, or listen to testimony. For these reasons, the undersigned has not relied heavily on their opinions in determining the severity of the claimant's impairments, or the residual functional capacity. The undersigned has instead relied on the overall record, including the claimant's testimony at the hearing and additional medical evidence received at the hearing level. Nevertheless, these consultants are specialists in their respective fields and are familiar with the definitions and evidentiary standards used by the agency. Furthermore, their assessments remain generally consistent with, and supported by, the objective medical evidence and the claimant's activities of daily living during the period, as discussed throughout this decision. Notably, different terminology and/or limitations have been used within the residual functional capacity to reflect the entire record, to provide the claimant's subjective allegations with reasonable deference, as well as in an effort to be more policy compliant.

(AR at 146.) I find that the ALJ both properly considered these opinions and properly addressed the consistency and supportability of these opinions. The ALJ also properly supported her conclusions that these opinions were not consistent with the record as a whole and were not adequately supported by objective medical findings in the record. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated these opinions.

In determining Claimant's RFC, the ALJ addressed and considered Claimant's medical history and treatment for her complaints. (AR at 142-46.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making her overall disability determination, including determining Claimant's RFC, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the evidence to the extent they are inconsistent with the above residual capacity assessment." (*Id.* at 145.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of her limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618; *see also Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (alteration in original) (citation omitted)."). Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803.

Accordingly, based on the foregoing, I recommend that the District Court affirm the ALJ's decision.

## *IV. CONCLUSION*

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 23rd day of September, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa