**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| HUSMIRA R., Plaintiff, vs. FRANK BISIGNANO, Commissioner of Social Security, Defendant. | No. C25-2015-LTS-MAR **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## *I. INTRODUCTION*

This case is before me on a Report and Recommendation (R&R) by the Honorable Mark A. Roberts, United States Magistrate Judge. Doc. 17. Judge Roberts recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, filed by plaintiff Husmira R. (the Claimant). The Claimant has filed timely objections (Doc. 18) and the Commissioner has filed a response (Doc. 19). Oral argument is not necessary. Local Rule 7(c).

## *II. APPLICABLE STANDARDS*

### *A. Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir.

2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). That means considering both the evidence that supports and detracts from the Commissioner's decision. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

The court applies a balancing test to assess any contradictory evidence in an appeal of a denial of benefits. *Sobania v. Sec'y of Health & Hum. Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555, or "review the factual record de novo," *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is

not subject to reversal simply because some evidence may support the opposite conclusion.”).

### *B. Review of Report and Recommendation*

A district judge reviews a magistrate judge’s R&R under the following standard:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, whenever a party objects to a portion of an R&R, the district judge must undertake a de novo review of that portion.

The unobjected to portions of an R&R are still reviewed under at least a “clearly erroneous” standard. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996). A finding is clearly erroneous when, “although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). A district judge may however elect to review an R&R under a more exacting standard even without an objection.

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## *III. DISCUSSION*

The Claimant filed for disability insurance benefits on May 16, 2022, alleging an onset date of February 5, 2021. AR 139, 323, 353. She asserts she became disabled due to post COVID-19 condition, chest pain, shoulder pain, inflammation, shortness of breath and lung scarring. *Id.* at 357.

An administrative law judge (ALJ) held a hearing on February 5, 2024, at which the Claimant was represented by counsel and a vocational expert (VE) testified. After the hearing, the ALJ applied the familiar five-step evaluation[1] and determined that the Claimant was not disabled as defined by the Social Security Act. AR 136-48. In so doing, the ALJ found: (1) Claimant was not engaged in substantial gainful activity; (2) Claimant's chronic respiratory disorder, fibromyalgia and obesity were severe, but her hypertension, heart palpitations, hyperlipidemia, hypothyroidism, type II diabetes mellitus, mild degenerative disc disease, mild degenerative joint disease, depression and post-traumatic stress disorder (PTSD) were not; (3) the Claimant's impairments, singly and combined, did not meet any listed disability; (4) the Claimant had a residual functional capacity (RFC) to perform light work (excepting some physical limitations) and (5) the Claimant could not perform any past relevant work but could otherwise adjust to working as a small products assembler, marker or routing clerk.

---

[1] The Commissioner must evaluate:

> (1) whether a Claimant is engaged in substantial gainful activity;
>
> (2) whether any claimed physical or mental impairments are "severe" as to significantly limit a Claimant's ability to perform basic work;
>
> (3) whether the severe impairments then fit within a presumptively disabling impairment listed in the regulations;
>
> (4) whether the Claimant's residual functional capacity allows him or her to perform past relevant work; and
>
> (5) whether there are other jobs in the national economy that the Claimant could perform.

20 C.F.R. § 404.1520; *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

The Claimant argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to (1) address the opinions of treating physicians Dr. Lydia Mustafic, M.D., and Dr. Lauren Graham, M.D., (2) "comply with the [Social Security Administration]'s policy regarding the symptoms evaluation and the evaluation of long COVID claims," (3) find that long COVID was a medically determinable severe impairment," instead fragmenting those symptoms into separate diagnoses, (4) properly evaluate her symptoms and RFC in association with the ALJ's credibility determination and (5) fully and fairly develop the record concerning the Claimant's long COVID limitations. The Claimant makes similar objections to the R&R's analysis of these issues. First, she objects to a finding that the medical opinions of Drs. Mustafic and Graham "do not provide any detailed medical opinions or functional limitations or restrictions." Doc. 17 at 12. Second, she objects to the conclusion that the ALJ did not err in failing to recognize the Claimant's long COVID as severe and that any Step Two errors were harmless. Finally, she objects to the finding that the ALJ fully and fairly developed the record even though the ALJ rejected the opinions of the Claimant's treating providers and did not obtain any other medical expert opinion on her long COVID-related limitations. I will discuss each of these in turn.

### *A. Opinions of Drs. Mustafic and Graham*

The Claimant argues the opinions of Drs. Mustafic and Graham limited her to sedentary work – defined as lifting/carrying up to 10 pounds occasionally, sitting over 50 percent of the time and standing or walking occasionally. They also concluded she could not work. The Claimant notes the ALJ concluded the Claimant could perform work at the light exertional level without addressing these opinions. She states that the sedentary, exertional level opinion is a specific, detailed functional limitation that is not equivalent to an opinion that the person is disabled. She argues the ALJ erred in failing to consider these opinions and imposing a light exertional limitation and the R&R failed to recognize this error. The Claimant argues remand is required for the ALJ to properly

evaluate these opinions under 20 C.F.R. § 404.1520c(b) and (b)(2) as well as *Bonnett v. Kijakazi*, 859 F. App'x 19 (8th Cir. 2021).

The R&R recognized that both Dr. Mustafic and Dr. Graham completed a "Restrictions Form" in which they each checked a box limiting Claimant to sedentary work. Doc. 17 at 9. The R&R noted these forms "do not provide any detailed medical opinions or functional limitations or restrictions" but "generically diagnose Claimant with long COVID and opine that she cannot perform full-time work." *Id.* at 12. The R&R adopted the Commissioner's argument that the ALJ was not required to address such opinions because they constituted statements on issues reserved to the Commissioner. Thus, it found no error with the ALJ's failure to address the "Restriction Forms" in her decision. *Id.* at 13.

Medical opinions are defined as statements from a medical source about "what [the claimant] can still do despite [his or her] impairment(s)." 20 C.F.R. §§ 404.1513(a)(i)(A), 414.1520c. Medical opinions do not include statements that a claimant is or is "not disabled, blind, able to work, or able to perform regular or continuing work." 20 C.F.R. § 404.1520b(c)(3). The parties essentially dispute whether the "Restrictions Forms" completed by Drs. Mustafic and Graham are medical opinions. The Claimant argues that the forms contained a functional limitation or restriction by checking the box limiting the Claimant to sedentary work (defined as lifting/carrying up to 10 pounds occasionally, sitting over 50 percent of the time and standing/walking occasionally) that went unaddressed by the ALJ. The Commissioner argues the forms merely contained statements on a judgment reserved for the Commissioner and therefore did not require any analysis from the ALJ. *See* 20 C.F.R. § 404.1520b(c).

In addressing the medical evidence at Step Four, the ALJ stated that she "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c." AR 143. The ALJ discussed the objective medical evidence and consultative examinations. AR 144-45.

She also discussed the opinions of the state agency consultants. AR 146. She did not discuss, or even acknowledge, opinions from Drs. Mustafic and Graham.

Dr. Mustafic selected "sedentary" when asked which option indicates what her patient is capable of performing occupationally on a full-time basis, but added a note that the Claimant "can't do anything full time."

2. For physical diagnoses, check one that indicates what your patient is capable of performing occupationally on a full-time basis:

| | | |
|---|---|---|
| ☒ | SEDENTARY | Lifting / carrying up to 10 pounds occasionally, sitting over 50% of the time and standing / walking occasionally. |
| ☐ | LIGHT | Lifting / carrying up to 20 pounds occasionally, sitting at least occasionally and standing / walking frequently. |
| ☐ | MEDIUM | Lifting / carrying up to 50 pounds occasionally; sitting, standing and / or walking constantly. |
| ☐ | HEAVY | Lifting / carrying up to 100 pounds occasionally; sitting, standing and / or walking constantly. |
| ☐ | VERY HEAVY | Lifting / carrying over 100 pounds occasionally; sitting, standing and / or walking constantly. |

| KEY: | OCCASIONALLY | FREQUENTLY | CONSTANTLY |
|---|---|---|---|
| | Up to 20 Minutes / Hour<br>Up to 2 ½ Hours / Day | Up to 40 Minutes / Hour<br>Up to 5 ½ Hours / Day | Over 40 Minutes / Hour<br>Over 5 ½ Hours / Day |

Can't do anything full time

AR 1633. This opinion is dated May 4, 2022. Dr. Graham also checked the box for "sedentary" and in a subsequent question opined that the Claimant "is unable to return to work."

2. For physical diagnoses, check one that indicates what your patient is capable of performing occupationally on a full-time basis:

| | | |
|---|---|---|
| ☒ | SEDENTARY | Lifting / carrying up to 10 pounds occasionally, sitting over 50% of the time and standing / walking occasionally. |
| ☐ | LIGHT | Lifting / carrying up to 20 pounds occasionally, sitting at least occasionally and standing / walking frequently. |
| ☐ | MEDIUM | Lifting / carrying up to 50 pounds occasionally; sitting, standing and / or walking constantly. |
| ☐ | HEAVY | Lifting / carrying up to 100 pounds occasionally; sitting, standing and / or walking constantly. |
| ☐ | VERY HEAVY | Lifting / carrying over 100 pounds occasionally; sitting, standing and / or walking constantly. |

| KEY: | OCCASIONALLY | FREQUENTLY | CONSTANTLY |
|---|---|---|---|
| | Up to 20 Minutes / Hour<br>Up to 2 ½ Hours / Day | Up to 40 Minutes / Hour<br>Up to 5 ½ Hours / Day | Over 40 Minutes / Hour<br>Over 5 ½ Hours / Day |

AR 1758. Her opinion is dated May 25, 2022. Both opinions also contain some brief narratives in response to other questions on the form.

While the Eighth Circuit has recognized that opinions "rendered on a check-box and fill-in-the-blank form" may be entitled to "relatively little evidentiary value" on their face, *see Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022), it has not held that they do not constitute medical opinions that the ALJ may ignore. Indeed, the case law suggests that similar forms are medical opinions that are entitled to the same treatment under the regulations as narrative or other formats of medical opinions. *See Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (noting the ALJ found a checkbox form "unsupported and highly inconsistent" with the record and because the ALJ had

considered the supportability and consistency of such opinion, the ALJ did not need to discuss other factors); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (noting a medical opinion that consisted of "three checklist forms, cite[d] no medical evidence, and provide[d] little to no elaboration" was conclusory and properly discounted by the ALJ).

Because the Restrictions Forms completed by Drs. Mustafic and Graham are considered medical opinions, the ALJ was required to articulate how she considered these opinions under 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520c(b) (explaining an ALJ must "articulate in [his or her] decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."). Even if there were legitimate reasons for giving little weight to these opinions, the ALJ's failure to make any such findings, and articulate whether they were supported by and consistent with the record, requires reversal, particularly because they were more limited than the RFC assigned to Claimant. *See Bonnett*, 859 F. App'x 19, 20 (8th Cir. 2021). The Claimant's objections as to this part of the R&R are sustained.

### *B. Evaluation of Long COVID*

The Claimant argues the ALJ was obligated to apply EM-21032 and erred by failing to find long COVID a severe impairment at Step Two. She notes that both state agency medical consultants found that her "s/p remote COVID diagnosis with post COVID complaints" were severe medically determinable impairments and that Drs. Mustafic and Graham also found her post-COVID symptoms were severe. The Claimant argues that the ALJ's failure to recognize these impairments as severe in light of the medical evidence was error. She also argues that the R&R should not have found this error harmless given that the Claimant's treating providers identified more restricted limitations associated with this severe impairment.

The R&R cited EM-21032 REV 2, which provides in relevant part:

> C. Policy Guidance
>
> 1. Establishing and coding a medically determinable impairment (MDI)
>
> We need objective medical evidence from an acceptable medical source (AMS) to establish the existence of an MDI for COVID-19, including long-term effects of COVID-19, which means signs, laboratory findings, or both (DI 24501.020A). We establish an MDI for COVID-19 when evidence from an AMS indicates:
>
> - A report of a positive viral test for SARS-CoV-2,
> - A diagnostic test with findings consistent with COVID-19 (e.g., chest x-ray with lung abnormalities, etc.), or
> - A diagnosis of COVID-19 with signs consistent with COVID-19 (e.g., fever, cough, etc.).
>
>   Follow existing policy for establishing an MDI (DI 24501.020).

Doc. 17 at 13.[2] The ALJ identified chronic respiratory disorder, fibromyalgia and obesity as the Claimant's severe impairments at Step Two. AR 141. The ALJ's discussion of the Claimant's long COVID was limited to the following at Step Four:

> The claimant alleged disability due to post-COVID 19, chest pain, shoulder pain, inflammation, shortness of breath, and lung scarring (Exhibit 2E, page 2). She reported her impairments impact her ability to stand, walk, sit, lift, climb stairs, kneel, squat, bend, and reach. She denied any difficulties with memory, concentration, interacting with others, or following instructions. She denied any difficulties with handling stress or changes in routine. Despite her physical impairments and purported limitations, the claimant remains independent for a wide range of daily activities, including daily personal care and grooming tasks, simple meal preparation, light household chores, driving, shopping, attending medical appointments, managing personal finances, and managing medications (Exhibit 3E; 6E).
>
> During the hearing, the claimant testified she is unable to work due to physical impairments and limitations. She described experiencing pain and shortness of breath with activities. She indicated she typically needs to

---

[2] Quoting https://secure.ssa.gov/apps10/reference.nsf/links/03282024111904AM (last visited Sept. 22, 2026).

take a break to sit down after 10-15 minutes of standing or walking. She estimated she can sit for approximately 30-45 minutes before needing to adjust positions. She related these limitations to long-haul COVID. She reported she takes medications but does not find them beneficial.

. . .

Review of the medical evidence reveals the claimant's alleged disability onset date appears to align most closely to abdominal pain complaints which resulted in the claimant having her gall bladder removed in March of 2021. She had a positive COVID-19 test around this same time-frame as well. Going forward, she continued to present a variety of respiratory complaints, including shortness of breath and chest pain. However, pulmonary and cardiovascular work up was consistently negative for underlying etiology regarding these complaints. This includes a normal echocardiogram, normal stress test, normal pulmonary function study, and normal chest x-ray. In fact, it was noted she was released back to work on April 13, 2021, with normal respiratory and cardiovascular exams and diagnostic findings (Exhibit 1F, page 2; 2F, pages 5 and 8; 4F, page 12). Respiratory and cardiovascular exams continued to remain generally unremarkable throughout the remainder of the period. A consult with rheumatology was negative for inflammatory arthritis. Essentially, no underlying etiology was identified with regard to her ongoing complaints of shortness of breath, chest pain, fatigue, and generalized pain/weakness. A fibromyalgia diagnosis was added at some point and a long-haul COVID diagnosis is indicated as well, presumably because she continually related to her providers that symptoms began following the COVID infection. Exam findings were positive for mildly decreased breath sounds and some areas of subjective tenderness and reduced range of motion but were otherwise generally unremarkable. She was managed conservatively through oral medications, physical therapy, and an albuterol inhaler for use as needed (Exhibit 1F; 2F; 3F; 4F; 6F; 10F; 12F; 19F; 20F; 21F; 22F; 23F; 24F; 25F; 26F; 30F; 31F; 32F).

. . .

The claimant's allegations are also eroded when juxtaposed with the objective medical evidence. While the evidence shows the claimant has continued to present with complaints of shortness of breath, chest pain, fatigue, and generalized pain/weakness since contracting COVID-19 in February of 2021, objective findings and diagnostic studies have failed to support her complaints. Indeed, she has had exhaustive pulmonary and cardiac work up, including an echocardiogram, stress test, pulmonary function study, and chest x-ray, all of which came back normal. A consult with rheumatology was normal. And she was actually released back to

> work on April 13, 2021, with normal respiratory and cardiovascular exams and diagnostic findings (Exhibit 1F, page 2; 2F, pages 5 and 8; 4F, page 12). Overall, the claimant's subjective allegations are simply inconsistent with, and out of proportion with, objective medical findings, as discussed in detail above.

AR 143-46.

The R&R concluded:

> The ALJ followed the SSA's policy guidance and considered Claimant's long COVID diagnosis in combination with Claimant's overall medical record. Claimant argues that, by doing this, the ALJ "fragmented" Claimant's post-COVID symptoms. However, the medical record does not support this argument and Claimant points to nothing in the record to support this argument.

Doc. 17 at 17. The R&R also noted the ALJ considered the Claimant's allegations of long COVID at Step Five[3] and considered her allegations of long COVID in connection to her complaints of chest and shoulder pain, limited stamina, and breathing issues. *Id.* Therefore, any error at Step Two was harmless as the ALJ continued with the sequential evaluation process and considered all impairments in doing so. *Id.*

At Step Two, the Commissioner must determine whether the claimant has a severe medically determinable impairment that meets the 12-month duration requirement. A severe impairment is one that "significantly limit[s] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The Eighth Circuit has suggested that when a diagnosis is supported by sufficient medical evidence, it should be considered a severe impairment and failing to consider it as such constitutes error by the ALJ. *See Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) (rejecting Commissioner's argument that failure to include diagnosis of borderline intellectual functioning as a severe

[3] This appears to be a typographical error as Step Five addresses whether there are jobs that exist in significant numbers in the national economy that Claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v). Step Four is when the ALJ assesses the claimant's RFC, which is the most an individual can do despite the combined effect of all his or her credible limitations. *See* 20 C.F.R. § 404.1545(a).

impairment at Step Two was harmless error). Several district courts within the Eighth Circuit have concluded that so long as the ALJ adequately addresses the effect of such impairments at subsequent steps, this error is harmless and does not require reversal of the Commissioner's decision. *See Alan L. v. Bisignano*, Case No. 25-cv-2377, at *5-6 (D. Minn. Apr. 30, 2026) (citing cases). So long as the claimant has one "severe" impairment, the ALJ must assess the claimant's RFC based on all alleged (severe and non-severe impairments). *Id.* at *6.

Here, the ALJ's consideration of the Claimant's long COVID impairment is complicated by the ALJ's failure to address the medical opinions of Drs. Mustafic and Graham related to that impairment that found the Claimant more limited than the ALJ's RFC assessment. While the ALJ discussed many of the alleged symptoms and subjective complaints associated with the Claimant's long COVID at Step Four, she primarily discounted them as not requiring additional limitations based on the objective medical evidence. This may have been acceptable in the absence of any medical opinions, but the record contains two medical opinions that impose more restricted limitations than assigned by the ALJ that went entirely unaddressed and that are based on Claimant's long COVID diagnosis. AR 1633, 1758. Because this case is already being remanded for the ALJ to consider those medical opinions, I find it appropriate for the ALJ to also consider whether the Claimant's long COVID diagnosis is a severe impairment at Step Two and evaluate all evidence associated with such impairment in assessing the Claimant's RFC at Step Four. The Claimant's objections as to this part of the R&R are sustained.

### *C. Full and Fair Development of the Record*

The Claimant argues the ALJ failed to fully and fairly develop the record concerning her long COVID limitations. While she notes the R&R found no medical expert testimony was necessary, it neglected to consider her argument that the ALJ should have addressed whether there was a period of disability through at least mid-2022, based

on the opinions of Drs. Mustafic and Graham.[4] She also maintains that the ALJ was required to obtain medical expert opinion concerning long COVID-related limitations if the ALJ was rejecting the opinions of Drs. Mustafic and Graham.

The R&R concluded that the ALJ's decision was based on a fully and fairly developed record and that the ALJ was not required to obtain additional medical evidence because the record as a whole provided a sufficient basis for the ALJ's decision. Doc. 17 at 20. I agree. The ALJ erred by failing to consider (or at least articulate her consideration of) medical opinion evidence in the record. On remand, even if the ALJ rejects the opinions of Drs. Mustafic and Graham, the ALJ is not required to obtain additional medical opinion evidence to support the RFC. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion.") (cleaned up). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quotation omitted).

Indeed, the Eighth Circuit has recently clarified its position on the argument that an RFC must be based on medical opinion evidence regarding a claimant's ability to function in the workplace. *See Bonham v. Bisignano*, 177 F.4th 934, 941-42 (8th Cir. 2026) (explaining that an RFC must be based on some reliable medical evidence about the claimant's ability to function in the workplace, but the evidence "need not include a medical professional's opinion regarding the claimant's functionality."). The record in

[4] Because there are other bases on which I find this case should be remanded that apply to this argument, I decline to address it independently. The ALJ may consider whether the record supports a closed period of disability on remand.

this case was adequately developed, but it was not adequately considered or articulated in the ALJ's decision as required by 20 C.F.R. § 404.1520c(b). The Claimant's objections as to this aspect of the R&R are overruled.

## *IV. CONCLUSION*

For the reasons set forth herein:

1. The Claimant's objections (Doc. 18) to the Report and Recommendation (Doc. 17) are **sustained in part** and **overruled in part**, as set forth above.

2. As a result, I hereby **accept** the Report and Recommendation (Doc. 17) in part and **decline to accept** the Report and Recommendation in part.

3. The Commissioner's determination that the Claimant was not disabled is **reversed and remanded** for further proceedings described herein.

4. Judgment shall enter in favor of the Claimant and against the Commissioner.

5. If the Claimant wishes to request an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, an application may be filed up until 30 days after the judgment becomes "not appealable," i.e., 30 days after the 60-day time for appeal has ended. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

**IT IS SO ORDERED** this 26th day of October, 2026.

Leonard T. Strand
United States District Judge